UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHENISE FAYE LYNCH,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. C16-1763 BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Shenise Faye Lynch appeals the ALJ's July 22, 2016, decision finding her not disabled. She contends the ALJ misevaluated the medical opinions regarding her chronic vomiting syndrome ("CVS") and improperly rejected her testimony. Dkt. 13 at 1. For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

In March 2012, Ms. Lynch applied for benefits, alleging disability as of November 4, 2011. Tr. 216-28. After her applications were denied, Tr. 134-42, 147-54, the ALJ conducted a hearing on April 3, 2013, Tr. 37-52, and subsequently found Ms. Lynch not disabled. Tr. 12-30. The U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further proceedings. Tr. 967-80. After holding a second hearing on June 7, 2016,

Tr. 892-931, the ALJ again found Ms. Lynch not disabled. Tr. 869-81. Ms. Lynch seeks judicial review of that decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Lynch had not engaged in substantial gainful activity ("SGA") since November 4, 2011.

**Step two:** Obesity, patellofemoral syndrome, cyclic vomiting syndrome, major depressive disorder, intellectual disability, and anxiety disorder with panic features were severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity ("RFC"):** Ms. Lynch can perform light work, with additional limitations. She should avoid "concentrated exposure to extremes of heat, fumes, odors, dusts, gases, poor ventilation, etc., and hazardous machinery or working at unprotected heights." She can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in less than 30 days. She can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required. She can deal with occasional changes in the work environment. She can have only occasional exposure to or interaction with the general public.

**Step four:** Ms. Lynch cannot perform her past work.

**Step five:** There are jobs that exist in significant numbers in the national economy that Ms. Lynch can perform.

## DISCUSSION

**A. Medical opinions**

Ms. Lynch contends ALJ misevaluated: (1) the June 2016 hearing testimony of medical expert John Clark, M.D.; (2) the October 2014 DSHS form opinion completed by examining

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

psychologist Michael Jenkins, Ph.D.; (3) the September 2015 evaluation report written by examining psychologist Linda Jansen, Ph.D.; (4) the report written by consultative examining psychiatrist David Sandvik, M.D., (5) the State agency psychological opinions; and (6) the opinions of Anya Zimberoff, Psy.D., Brenda Hanellan, Ph.D., Mark Magdaleno, M.D., Marlon Balauag's M.D, Brian Snitily, M.D., and Alice Burden, PA-C..

### 1. Dr. Clark

Dr. Clark testified Ms. Lynch has a "neurological emotional stress component to her vomiting," Tr. 908; "stress" was an "aggravating factor," Tr. 915; Ms. Lynch's vomiting episodes would "probably" interfere with her ability to work; Ms. Lynch "probably needs to work "where she could go to the restroom," Tr. 914; her condition was "problematic"; and that because there was a "large psychiatric element" to Ms. Lynch's vomiting, "he would like to defer to the psychiatric evaluation." Tr. 916.

Ms. Lynch argues the ALJ erroneously rejected Dr. Clark's opinion that she is limited to work "unassociated with stress," will have attendance problems, and needs a job where she can go to the restroom. Dkt. 13 at 5. The Commissioner argues since Dr. Clark stated he would defer to the psychiatric evaluation, he "declined to render an opinion" regarding Ms. Lynch's work attendance problems. Dkt. 14 at 4. The argument fails. The ALJ did not mention or discuss this limitation. Because the ALJ did not find Dr. Clark declined to render an opinion about attendance problems, the Commissioner's argument is an improper post-hoc rationalization upon which the Court cannot rely to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 1995).

The Commissioner also argues the ALJ "limited Plaintiff's workplace in a manner designed to reduce her stress level, thereby alleviating any concerns regarding attendance present in Dr. Clark's opinion." *Id.* This argument is based on the ALJ's observation that Dr. Clark opined Ms. Lynch would need a job unassociated with stress and the ALJ's finding that "this is not inconsistent with a capacity for no more than simple work requiring little to no judgment, no teamwork, no more than occasional changes in the work environment, and no more than occasional exposure with the general public." Tr. 878.

The ALJ's finding, however, is not supported by substantial evidence of record. No witness, including the vocational expert, stated the work described above by the ALJ would accommodate Ms. Lynch's stress limitations. The ALJ thus erred because his finding appears to be based upon nothing more the ALJ's own research and views, rather than competent evidence of record. *See e.g. Yang v. Apfel*, No C99591, 2000 WL 342669 at * 4 (N.D. Cal. March 22, 2000) ("ALJ improperly discredited plaintiff's credibility because he based his reasoning on his personal views and not on the evidence in the case record."); *Van Dine v. Astrue*, No. 10-00712, 2012 WL 1069985 at * 43 (OR, Feb. 27, 2012) ("The ALJ offers no support for this conclusion, which appears to be based on his own personal views. There is no reference to a treating doctor or any doctor's opinion to support this conclusion.").

And finally the Commissioner argues the ALJ's failure to discuss Dr. Clark's testimony that Ms. Lynch needs a job where she can go to the restroom is harmless because the doctor's testimony "does not suggest that Plaintiff requires access to a restroom beyond what would be present in a normal work environment." Dkt. 14 at 5. The Court rejects the argument for two

reasons. First, the ALJ's failure to discuss Ms. Lynch's need for a restroom is an omission that cannot be cured by the post hoc argument the Commissioner makes. As noted above, the Court reviews the ALJ's decision based on the reasoning and findings offered by the ALJ—not post hoc rationalizations. And second, the Commissioner's interpretation of the doctor's opinion is unreasonable. Virtually all workplaces have restroom facilities. Dr. Clark would not have stated Ms. Lynch needs a restroom if the restroom facilities typically available at a workplaces were sufficient. If the typical facilities were sufficient, the doctor would have had no reason to mention Ms. Lynch needed access to a restroom. The only reasonable interpretation of Dr. Clark's statement is that the doctor believed Ms. Lynch's vomiting problem limits her to work that can be performed in close proximity to a restroom. The ALJ did not account for this limitation in the RFC determination or ask the vocational expert about this limitation and accordingly erred.

**2.     Dr. Jenkins**

Dr. Jenkins opined Ms. Lynch was markedly limited in her ability to perform activities within a schedule; maintain regular work attendance; be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 1420. The ALJ rejected Dr. Jenkins's opinion as inconsistent with his mental status examination findings, which the ALJ found indicated normal memory and concentration, and adequate eye contact, cooperative demeanor, and clear and coherent speech. Tr. 879.

Ms. Lynch argues the ALJ erroneously rejected Dr. Jenkin's by selecting only the portions of the doctor's evaluation that support the ALJ's determination—the mental status exam—and ignoring other findings that do not. Dkt. 15 at 4-5. The Commissioner argues the

other portions of Dr. Jenkin's evaluation that Ms. Lynch points to do not erase the contradiction between the doctor's opinions and the mental status exam finding, and that the ALJ's finding is thus reasonable. Dkt. 14 at 6. The Court agrees with Ms. Lynch.

The ALJ misevaluates a doctor's opinion by selecting only portions of the doctor's opinions and omitting the remainder without discussion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("[T]he ALJ improperly cherry-picked some of [the doctor's] characterizations of [the claimant's] rapport and demeanor instead of considering these factors in the context of [the doctor's] diagnoses and observations of impairment.") (citations omitted). But this is what the ALJ did here. Dr. Jenkins stated under "clinical findings" that Ms. Lynch's anxiety was manifested by "hand-wringing observed during interview and signs of tension." He noted Ms. Lynch stated she is anxious and worried almost every day, that her anxiety is difficult to control and that it is interfering with her life in some areas. TR. 1419.

In that same section, Dr. Jenkins also stated Ms. Lynch's depression was evidenced by his observation that she had "restricted affect at times." *Id.* The doctor recorded how Ms. Lynch's reports of down mood and sadness on many days; decreased appetite; change in weight; disrupted sleep; and worthlessness. *Id.* Dr. Jenkins further opined under "further treatment," that Ms. Lynch appears to be struggling with anxiety, panic, and depression "in a context of a chronic stomach condition that is yet to be medically explained. It is likely that this stomach condition is related to psychological factors, especially given this client's anxiety symptoms and physical manifestation of anxiety and strong reactions to stress." Tr. 1421.

The ALJ failed to discuss these portions of Dr. Jenkin's evaluation; instead based solely on the mental status exam findings, the ALJ found the doctor's opinion that Ms. Lynch had marked mental health limitations was unsupported. The Court notes that this is not a situation in

which the ALJ weighed all of the findings made by Dr. Jenkins as the Commissioner's suggests in arguing the other findings do not "erase" contradictions between the mental status exam and the doctor's opinions. This is because the ALJ did not address the doctor's other findings and thus could not have weighed the other findings the doctor made. The ALJ accordingly erred.

### 3. Dr. Jansen

Dr. Jansen opined Ms. Lynch could not maintain regular work attendance, due to her cyclic vomiting, and that she is markedly restricted in her ability to respond appropriately to usual work situations and to changes in a routine work setting. Tr. 1445, 1448. Dr. Jansen indicated Ms. Lynch "is not likely to succeed without improvement in her medical condition." Tr. 1445.

The ALJ rejected Dr. Jansen's opinion that Ms. Lynch would not be able to maintain regular work attendance due to cyclic vomiting, finding the condition was a "physical condition" and "thus outside the psychologist's area of expertise. Tr. 878-79. This is neither a clear and convincing nor a specific and legitimate reason to reject Dr. Jansen's opinion. First, the ALJ found the medical evidence showed Ms. Lynch's cyclic vomiting is a severe impairment, i.e. it is a medically determinable condition. This is thus not a case in which Dr. Jansen was rendering an opinion about the existence of a medical condition that was outside of her expertise.

Second, the ALJ's finding that CVS is a "physical condition," is not supported by substantial evidence. Dr. Clark testified that Ms. Lynch's vomiting was a "syndrome" and not the "equivalent of a disease," Tr. 907, and that he thought the CVS was related to a neurological emotional stress problem. Dr. Clark's opinion is consistent with the Dr. Jenkin's opinion that Ms. Lynch's vomiting was medically unexplained. Tr. 1421.

And third, Dr. Jansen is not the only medical source who opined that Ms. Lynch's cyclic vomiting limited her ability to perform gainful work. Dr. Clark testified that Ms. Lynch's cyclic vomiting would cause attendance problem. Dr. Jenkins opined Ms. Lynch would have attendance problems noting that her vomiting was intertwined with her mental health problems. Dr. Clark and Dr. Jenkins both opined Ms. Lynch's vomiting was linked to her mental health problems, which is a conclusion that the ALJ did not reject. Given the record, the ALJ's finding that Dr. Jansen rendered an opinion outside her expertise is not supported by substantial evidence.

The Court also notes the ALJ's explanation for why he was rejecting Dr. Jansen's opinion—"implication that the claimant is unable to sustain work activity appeared to be based on the claimant's physical condition, cyclic vomiting and is thus outside the psychologist's medical expertise"—does not track the doctor's evaluation or many of the doctor's findings. Tr. 878-79. The doctor did not *imply* Ms. Lynch could not work; rather Dr. Jansen found based on Ms. Lynch's mental health problems "she is unable to maintain long term employment because she is sick too often." Tr. 1445. The doctor then set forth Ms. Lynch's mental health symptoms and concluded that "all of these interfere not only with ability to work but also restrict her social functioning and activities of daily living." *Id.* Dr. Jansen also opined that Ms. Lynch's mental health problems "interfere with her ability to deal with the usual stress encountered in the competitive workplace," a limitation that the ALJ did not discuss, mention, or include as a limitation in fashioning Ms. Lynch's RFC or in questioning the vocational expert about the jobs Ms. Lynch could perform. Hence, even if the ALJ properly discounted Dr. Jansen's opinions regarding the impact CVS has on Ms. Lynch, the ALJ improperly failed to address the other limitations the doctor found that flowed from her mental health problems.

### 4. Dr. Sandvik

Dr. Sandvik examined Ms. Lynch in July 2012. Tr. 600-02. Dr. Sandvik opined:

> As was noted, [Ms. Lynch's] thinking was fairly concrete. She had some difficulty focusing on task and was only able to repeat digits backward up to 2. She had difficulty making correct change in 2 of 4 problems put to her, and in those she made she was very slow. She has some difficulty with social interaction and she is inclined to be avoidant except for contact with very selective and few friends. With some of her problems it would seem unlikely that she could perform work activities consistently through a normal workday. Perhaps she could work part-time in fairly low stress situations. She is on multiple medications. From a psychiatric perspective, it would seem that she needs antidepressants and anxiety-anxiety medications, as well as supportive counseling. She appears able to manage any funds granted her herself at this time.

Tr. 602. The ALJ rejected Dr. Sandvik's conclusions as inconsistent with Ms. Lynch's ability to parent her daughter on her own during the adjudicated period, and her ability to work as a hairdresser in 2014. Tr. 878. Ms. Lynch argues the ALJ erred because Dr. Sandvik was aware of these activities when he rendered his opinion. Dkt. 13 at 9-10. The argument would be more persuasive if the doctor explained why he believed Ms. Lynch was disabled despite her ability to care for a young child. But he didn't and the Court declines to find that a doctor's awareness of a factor bearing on his opinion, alone, automatically immunize his opinions from being discounted.

Ms. Lynch also argues Dr. Sandvik was unaware that Ms. Lynch performed some work in 2014, because he rendered his opinion in 2012. This does not address the plain fact that Ms. Lynch's work activity in 2014 is inconsistent with the doctor's opinion. Ms. Lynch further argues that because her work activity in 2014 did not rise to the level of SGA, it was consistent with Dr. Sandvik's opinion that she could work part-time. *Id*. However, Dr. Sandvik opined he was uncertain whether Ms. Lynch could work even part-time, and found it unlikely Ms. Lynch she could complete a normal workday. Tr. 602. These limitations cannot be squared with the

fact that Ms. Lynch performed some work activity in 2014. Accordingly, even though Ms. Lynch did not perform SGA in 2014, it was not unreasonable for the ALJ to find her 2014 work activity is inconsistent with the doctor's opinion.

Ms. Lynch further argues the ALJ erred in finding her ability to care for her young child was inconsistent with Dr. Sandvik's opinion. However, evidence of ability to care for children can be considered as a factor in assessing a claimant's alleged disability. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.2001) (ALJ appropriately considered claimant's ability to care for her children as a factor in assessing her credibility and finding her less limited than alleged). In sum, the Court affirms the ALJ's assessment of Dr. Sandvik's opinions.

### 5. State agency consultants

Ms. Lynch argues the ALJ erred in giving great weight to the State agency psychological consultants, Drew Stevick, M.D. and Alnoor Virji, M.D. The Court need not discuss the ALJ's assessment at this time. The ALJ misevaluated the opinions of Drs. Clark, Jansen and Jenkins, and the agency opinions will necessarily be reassessed upon remand, as part of the reevaluation of the other medical evidence.

### 6. Dr. Balauag

Ms. Lynch argues the ALJ erred finding Marlon Balauag's M.D., opined Ms. Lynch could perform light-duty work if her medications were working for her. The parties argue over Ms. Lynch's medications and their efficacy. The Court need not untangle the parties' arguments because the ALJ made no findings about whether the medications were or were not working. Hence the doctor's opinion that Ms. Lynch can perform light work *if* her medications were working is unresolved and must be revisited by the ALJ on remand.

### 7. Dr. Magdaleno

In September 2014, Mark Magdaleno, M.D., opined Ms. Lynch's ability to work was "severely limited." Tr. 877. In August 2015, he opined Ms. Lynch could work at the "light" level of work. *Id.* The ALJ accorded greater weight to Dr. Magdaleno's 2015 opinion finding that in that exam the doctor provided "substantiating objective evidence from his own physical exam of the claimant." *Id.* In contrast, the ALJ found that the doctor's 2014 opinion was based entirely on the "claimant's subjective complaints as the doctor noted a normal exam." *Id.*

Ms. Lynch argues the ALJ erred by failing to include all of the limitations Dr. Magdaleno assessed in the 2015 opinion, including how Ms. Lynch's knee problems and cyclic vomiting moderately limited her ability to perform a variety of physical actions. Dkt. 15 at 7 (citing Tr. 1810). The Commissioner argues the ALJ did not err because Dr. Magdaleno did not detail what work would be affected and did not believe that the limitations were disabling. Dkt. 14 at 10. The Commissioner's interpretation fails. The ALJ never addressed Dr. Magdaleno's opinion that Ms. Lynch had moderate limitations due to knee and vomiting problems. Hence all that is before the Court is what the Commissioner thinks, not what the ALJ assessed and found. Additionally, the fact Dr. Magdaleno in 2015 did not find Ms. Lynch was "disabled" does not cure the ALJ's failure to address the doctor's opinions. A valid RFC determination requires consideration of all limitations. This did not occur when the ALJ failed to assess the limitations set forth by Dr. Magdaleno. The ALJ accordingly erred by failing to assess all limitations Dr. Magdaleno found in 2015.

### 8. Dr. Havellana

Ms. Lynch argues the ALJ erred in failing to discuss Brenda Havellana's, Ph.D., statement that "successful employment might be mildly to moderately challenging" and that

though beyond the scope of her evaluation, "physical symptoms pose the primary barrier to employment." Dkt. 13 at 12 (citing Tr. 486, 879). Ms. Lynch bears the burden to show the ALJ harmfully erred. *Molina v. Astrue*, 674 F.3d 1104, (9th Cir. 2012). She fails to meet this burden by providing no explanation setting forth how or why the doctor's statement undermines the ALJ's findings. To be sure, no explanation is needed where a medical opinion facially establishes a limitation not considered by the ALJ. But in this case, Dr. Havellana did not opine Ms. Lynch could not work; instead she opined work might be mildly or moderately challenging. This opinion sets forth no specific limitation that the ALJ should have and failed to assess. Additionally, Dr. Havellana withheld judgment on the impact of Ms. Lynch's CVS, stating it was outside the scope of her examination. Given the phrasing of this statement, the Court cannot say that Ms. Lynch has shown the ALJ harmfully omitted a limitation found by the doctor in determining Ms. Lynch's RFC.

**9.     Ms. Burden**

Ms. Lynch notes Alice Burden, PA-C "acknowledged that [Ms. Lynch's] CVS would intermittently interfere with working, however the ALJ dismissed this assessment because it was prior to the date of onset." Dkt. 13 at 12 (citing Tr. 879). Ms. Lynch does not identify how or why the ALJ erred in making this assessment, and has failed to carry her burden of showing harmful error.

**9.     Dr. Snitily**

The ALJ accepted Brian Snitily's, M.D., opinion that Ms. Lynch could perform medium work but rejected his opinions about her climbing, balancing, stooping, kneeling and crawling abilities. Ms. Lynch argues the ALJ erred by ignoring "his opinion that there was no evidence of CVS during the exam 'which is not uncommon for [CVS] in my experience. However I am not

able to comment on how this affects her functionally as she is not currently symptomatic." Dkt. 13 at 12 (citing Tr. 1460). Although the ALJ failed to comment on this statement, Ms. Lynch provides no explanation as to why that failure is harmful. Absent any explanation the Court rejects Ms. Lynch's argument. The statement plainly does not articulate any limitation that the ALJ should have and failed to discuss. Quite the opposite, it plainly indicates the doctor could not comment on the impact of CVS on Ms. Lynch's functioning. The ALJ accordingly did not err and his assessment is affirmed.

**10. Dr. Zimberoff**

Treating psychologist Anya Zimberoff, Psy.D., opined Ms. Lynch needs an "'employer who can accommodate sudden sick days. When [a vomiting episode] happens, she vomits repeatedly all day.'" Tr. 1431. Ms. Lynch correctly contends the ALJ erred by completely ignoring Dr. Zimberoff's opinion. Dkt. 13 at 12. The Commissioner does not dispute Ms. Lynch's contention the ALJ failed to discuss Dr. Zimberoff's opinion but argues because Dr. Zimberoff did not specifically indicate how often Ms. Lynch would be absent from work, the doctor's opinion does not indicate Ms. Lynch is disabled, and is not inconsistent with the ALJ's RFC assessment. The Commissioner's argument fails. The ALJ's repeated failure to evaluate relevant evidence is not inconsequential to the disability process. To properly determine a claimant's RFC to work, the ALJ is required to consider all of the relevant medical opinions as well as the combined effects of all her impairments, even those not found to be severe. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). This did not occur when the ALJ completely omitted mention of Dr. Zimberoff's opinions.

The ALJ must explain why "significant, probative evidence has been rejected," and must explain why uncontroverted medical evidence is rejected. *Vincent v. Heckler*, 739 F.2d 1393,

1395 (9th Cir. 1984). This did not happen because the ALJ completely omitted the doctor's opinions.

The Court reviews the ALJ's decision based on the reasons offered by the ALJ. This will not happen if, in the absence of any discussion by the ALJ, the Court simply accepts the arguments raised post hoc on appeal by the Commissioner. Moreover, the Commissioner's argument turns a blind eye to the other evidence of record. The Commissioner suggests Ms. Lynch's CVS would affect her ability to work perhaps once or twice a month, and that therefore her vomiting episodes would not preclude gainful full-time work. Dkt. 14 at 11. The Commissioner points to no evidence of record supporting a finding that the vomiting episodes occur just once or twice a month. If anything, the evidence points the other way. Ms. Lynch testified that the episodes occurred several times and several doctors opined that her vomiting would affect her ability to perform work.

**B.     Ms. Lynch's Testimony**

The ALJ did not find Ms. Lynch was malingering and was therefore required to set forth specific, clear and convincing reasons to reject her testimony. *Molina v.* Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In addition, because the ALJ's decision was issued in July 2016, it must comport with SSR 16-3p, which replaced SSR 96-7p, effective March 28, 2016. SSR 16-3p states that:

> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities or, for a child with

a title XVI disability claim, limit the child's ability to function independently, appropriately, and effectively in an age-appropriate manner.

Under SSR 16-3p, the ALJ must thus consider all relevant evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, including the medical evidence, the claimant's statements, the claimant's attempts to get treatment, and the frequency of treatment. The ALJ must also consider the factors set forth in 20 CFR 404.1529(c)(3) and 416.929(c)(3), such as daily activities; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ rejected Ms. Lynch's testimony for several reasons. The ALJ found Ms. Lynch engaged in activities consistent with some degree of work activity. However, the ALJ's discussion ignores the context in which Ms. Lynch performed the activities. Ms. Lynch stated she could perform the activities described by the ALJ, Tr. 875, while she was not experiencing a vomiting episode. But Ms. Lynch never stated she could perform the activities while vomiting and the ALJ pointed to no evidence showing otherwise. Dkt. 13 at 13. The ALJ accordingly erred by failing to identify an inconsistency in Ms. Lynch's testimony and by failing to find that she could perform those activities consistently, even while experiencing vomiting episodes.

The ALJ next rejected Ms. Lynch's testimony noting she is well-nourished and -hydrated and did not lose excessive weight, despite frequent vomiting episodes. This evidence does not

undermine Ms. Lynch's testimony because she did not contend her vomiting caused her to be dehydrated, or to lose weight. Instead, she alleged her vomiting caused her to be unable to perform any activities during an episode, which is not inconsistent with the normal findings cited by the ALJ in this paragraph. Tr. 875-76.

The ALJ also found Ms. Lynch's work activity undermines her testimony. Dkt. 13 at 14-15. The ALJ found Ms. Lynch engaged in substantial gainful activity in 2009 and 2010. The ALJ acknowledged this gainful activity occurred before the 2011 alleged onset of disability, but found that just after the alleged onset date, Ms. Lynch reported her symptoms had remained the same since the time the symptoms started. Tr. 875 (citing Tr. 718). This finding, however, fails to take into account that Ms. Lynch also reported to her doctors that her symptoms worsened over time. *See* Tr. 483 (indicating that her vomiting episodes had become more frequent), 1456 (same). Ms. Lynch's testimony is supported by the medical record which shows her symptoms continued, Tr. 1446, or have "been going on" since 2006, Tr. 1256, and that since 2011 her symptoms have also worsened. *See* Tr. 440, 470, 474, 502, and 1357. The ALJ's conclusory finding that Ms. Lynch's symptoms are unchanged since 2006 is accordingly not supported by substantial evidence.

The ALJ further rejected Ms. Lynch's testimony based on the results of several mental tests. In specific the ALJ noted testing showed Ms. Lynch had borderline intellectual functioning, some difficulty focusing, borderline immediate and delayed memory, but could follow directions, perform the tests at a normal pace; the ALJ also noted Ms. Lynch had within normal range scores on a "brief cognitive status exam." The ALJ concluded the testing showed Ms. Lynch could perform simple work. Tr. 876-77. The ALJ erred for two reasons. First, Ms. Lynch did not testify she lacked the cognitive ability to do simple work. Hence the cognitive test

results do not contradict her testimony. And second, the tests upon which the ALJ relied do not address Ms. Lynch's claim that she has other mental health problems that limit her functioning. As the ALJ himself noted, Ms. Lynch claimed she was anxious, had frequent panic attacks, had feelings of worthlessness, felt fatigued and that she had "episodes" several times a week that left her bedridden. Tr. 875. The ALJ did not discuss how or why the cognitive test scores he relied upon contradict these claims.

The ALJ also rejected Ms. Lynch's testimony finding that her "cyclic vomiting may be secondary to her chronic marijuana use." Tr. 876. The Commissioner argues the ALJ may properly reject a claimant's testimony where the claimant fails to seek "an alternative or more tailored treatment program." Dkt. 14 at 14. The argument fails because the ALJ never found Ms. Lynch should have sought a "more tailored" treatment program, or that she had failed to follow a prescribed course of treatment. Tr. 876. The ALJ simply noted Ms. Lynch was told marijuana use may cause or induce vomiting. *Id.* The Commissioner's position is thus an improper post hoc argument which the Court cannot rely upon to uphold the ALJ's findings.

Additionally, the ALJ's finding that Ms. Lynch's marijuana's use is "chronic" and may cause her cyclic vomiting indicates substance abuse is a severe impairment and that the ALJ should have conducted Drug Addiction and Alcohol ("DAA") analysis as required by 20 C.F.R. §§ 404.1535(a), 416.935(a) and *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). The ALJ, however, never mentioned Ms. Lynch's chronic marijuana use at step-two, though it is clear from his discussion above that he viewed her drug use as potentially having more than a minimal impact on her ability to perform gainful activity. In the subsequent steps of the disability analysis, the ALJ failed to assess the impact marijuana use had on Ms. Lynch's ability to work; failed to perform the analysis required by the regulations and *Bustamante*, and instead

simply concluded Ms. Lynch's drug use is may cause her cyclic vomiting.  In short, because the ALJ viewed marijuana use as a cause of Ms. Lynch's cyclic vomiting, a severe impairment, the ALJ should have performed a DAA analysis in this case.  The ALJ accordingly erred in rejecting Ms. Lynch's testimony.  The error is not harmless, as Ms. Lynch testified she was more limited than the ALJ found in determining her RFC, and the ALJ did not account for those limitations in making step five findings that there are jobs Ms. Lynch can perform in the national economy.

## CONCLUSION

The Court **REVERSES** the commissioner's final decision and **REMANDS** this case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  Ms. Lynch requests the Court enter a judgment reversing the ALJ's decision and remanding for calculation and payment of benefits.  A district court may remand for an award of benefits when the following conditions are satisfied:  The Court must first "determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence."  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citing *Burrell*, 775 F.3d at 1141).  Next, the Court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved."  *Id*. (citing *Treichler v. Comm'r, Soc. Sec. Admin*., 775 F.3d 1090, 1101 (9th Cir. 2014)) (internal quotation marks and citation omitted).

The Court may not remand with a direction to provide benefits unless it concludes that further administrative proceedings would serve no useful purpose.  *Id*.  Several medical opinions and Ms. Lynch's testimony must be reevaluated, and Ms. Lynch's marijuana use needs to be properly assessed.  These are issues that cannot be evaluated in the first instance by the Court.

Accordingly, as the record is not fully developed, the case is ordered be remanded for further administrative proceedings.

On remand, the ALJ shall address the impact of Ms. Lynch's marijuana use; reassess Ms. Lynch's testimony; and reevaluate the medical opinions of John Clark, M.D., Michael Jenkins, Ph.D., Linda Jansen, Ph.D., David Sandvik, M.D., Anya Zimberoff, Psy.D., Mark Magdaleno, M.D., and Marlon Balauag's M.D.  The ALJ shall apply the five step disability evaluation process and develop the record as necessary.

DATED this 14th day of April, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge